IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DISCOVER PROPERTY & CASUALTY INSURANCE CO., <br>     Plaintiff/Counterclaim-Defendant, <br><br> v. <br><br> THE MITCHELL CO., INC., <br>     Defendant/Counterclaim-Plaintiff. | )<br>)<br>)<br>)<br>) CIVIL ACTION NO. 10-00663-KD-M<br>)<br>)<br>) |

**ORDER**

This matter is before the Court on Plaintiff/Counterclaim-Defendant Discover Property & Casualty Insurance Co.'s Motion for Summary Judgment (Doc. 28), brief and evidentiary materials in support (Docs. 28-1 & 29), Defendant/Counterclaim-Plaintiff Mitchell Co.'s Response (Doc. 55) and evidentiary materials in support (Docs. 55-1 to 55-16), and Plaintiff/Counterclaim-Defendant's Reply (Doc. 58).  Upon consideration, and for the reasons set forth herein, the motion for summary judgment is due to be **GRANTED**.

**I.     Procedural History**

On September 29, 2010, Defendant/Counterclaim-Plaintiff Mitchell Co. ("Mitchell"), an Alabama corporation with its principal place of business in Mobile, Alabama, filed a complaint in the Circuit Court of Mobile County, Alabama against Plaintiff/Counterclaim-Defendant Discover Property & Casualty Insurance Co. ("Discover"), an Illinois corporation with its principal place of business in Chicago, Illinois, alleging causes of action for breach of contract, bad faith failure to investigate, and bad faith failure to pay.

On November 24, 2010, Discover timely removed Mitchell's case to federal court on the basis of diversity jurisdiction.  Four days later, before Discover responded to the complaint, Mitchell filed a notice of dismissal.  Pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure, the

1

action was terminated on November 30, 2010.[1]

Hours after Mitchell's case against Discover was closed, Discover commenced the instant declaratory judgment action. (Doc. 1). Specifically, Discover sought a declaration that, under an insurance policy between Discover and Mitchell, coverage does not exist for the damage or loss that Mitchell alleged in its September 29 state court complaint. (Doc. 1). Mitchell answered Discover's complaint on January 6, 2011. (Doc. 9).

Nearly six weeks later, on February 16, 2011, Mitchell moved to amend its answer, to assert a counterclaim against Discover for proceeds under the insurance policy, and to assert unspecified third-party claims against an unidentified party. (Doc. 15). The proposed amended answer Mitchell subsequently filed on March 4, 2011 departed significantly from the responsive pleading Mitchell had described in its motion. (Docs. 25 & 26-1). Rather than asserting a counterclaim for proceeds, Mitchell's proposed answer alleged one breach of contract claim and two bad faith claims against Discover. (Doc. 26-1 at 3-4, ¶¶ 6-12). Mitchell also named not one but two additional parties that it sought to bring into this action and sue for fraud and negligence, but it did not assert any grounds for their joinder. By order dated March 24, 2011, the Court allowed Mitchell to assert each of its proposed counterclaims against Discover but denied that portion of Mitchell's motion that sought to join third parties. (Doc. 31). Discover answered Mitchell's counterclaims on April 15, 2011. (Doc. 40).

On March 18, 2011, a week before the Court granted Mitchell leave to assert its counterclaims against Discover, Discover filed a motion for summary judgment "as to all claims presently pending against it in the above-styled action." (Doc. 28 at 1). In point of fact, no claims

---

[1]   The short-lived civil action of <u>Mitchell Co. v. Discover Property & Casualty Insurance Co.</u> was assigned Case No. 10-cv-00647-M (S.D. Ala.).

2

were pending against Discover as of March 18, 2011, but the Court construes Discover's motion as seeking a dispositive decision on the entire case. Mitchell's response to the motion (Doc. 55) and Discover's reply (Doc. 58) were both timely filed, and the motion is now ripe for consideration.

## II.     Standard of Review

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a party asserts that a fact cannot be or is genuinely disputed, that party must

> (A)   cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B)   show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)-(B).

Discover, as the party seeking summary judgment, bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If a non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. In reviewing whether a non-moving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in its favor. Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-99

(11th Cir. 1992) (internal citations and quotations omitted).

### III. Factual Background

Mitchell is an owner and manager of several apartment complexes in the southeastern United States. (Doc. 32 at 2, ¶ 1). Discover is a stock insurance company. (Doc. 1-1 at 23). On or about September 15, 2005, Discover issued a commercial property insurance policy, Policy No. DM004Z00067 (the "Policy"), to Mitchell. (Doc. 1 at 2, ¶ 6). Subject to certain conditions, limitations, and exclusions, the Policy obligated Discover to pay Mitchell up to $5,000,000 per occurrence of loss at various "covered premises" owned, rented, or occupied by Mitchell. (Doc. 1-1 at 24; id. at 39, ¶ J.2). The Property Declarations page of the Policy did not specifically or separately identify any of the covered premises; rather, it incorporated by reference a "Schedule on file with [Discover]." (Id.).

In chart form, the Schedule listed a warehouse and nearly 50 different apartment complexes, shopping centers, and office buildings — some of which Mitchell owned, some of which Mitchell managed but did not own, and some of which Mitchell both owned and managed. (Doc. 56-1 at 4). For most but not all of the premises, the Schedule presented dollar values under the column headings "Rents," "Building," and "Bus Pers Property." For each property, the sum of those three figures was recorded in a separate column under the heading "Total Property Values." The sum of all Total Property Values on the Schedule — $169,314,634 — was listed at the bottom of the page in a line item entitled "Grand Total." In part, this Grand Total of Total Property Values drove the premium that Mitchell owed to Discover in exchange for coverage. See id. at 8 ("Premium/Rates: $711,121 premium based on .42 rate per $100 of $169,314,634 exposure base (plus any applicable taxes, fees &/or surcharges).").

Colonial Manor Apartments ("Colonial Manor"), an apartment complex in Pascagoula,

Mississippi, was among the premises listed in the Schedule whose Total Property Value contributed to the "exposure base" upon which Mitchell's premium was calculated. The Schedule clearly notes that Mitchell managed, but did not own, Colonial Manor. (Doc. 56-1 at 4).

Mitchell claims that, at some point in July 2006, persons unknown to Mitchell stole copper piping and fixtures from vacant units at Colonial Manor. (Doc. 32 at 2, ¶ 4). Sometime thereafter, Mitchell demanded that Discover cover its losses caused by the alleged theft, but Discover did not meet that demand. (Id. at ¶ 5). Though the record before the Court does not indicate when Mitchell demanded payment or what post-demand efforts were made to resolve the parties' dispute, it is clear that, by September 2010, Mitchell resorted to suing Discover for breaching the Policy and acting in bad faith. As detailed above, after a series of procedural twists and turns, the question of whether the Policy covers the theft of copper piping and fixtures from Colonial Manor is now before this Court.

**IV.     Analysis**

    **A.     Governing Law**

"[A] federal court in a diversity case is required to apply the laws, including principles of conflict of laws, of the state in which the federal court sits." Manuel v. Convergys Corp., 430 F.3d 1132, 1139 (11th Cir. 2005) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). Adhering to the principle of lex loci contractus, Alabama courts hold that contract claims are governed by the laws of the state in which the contract was made, unless the contracting parties chose a particular state's laws to govern their agreement. Cherry, Bekaert & Holland v. Brown, 582 So. 2d 502, 506 (Ala. 1991). It is axiomatic that insurance policies are "essentially like all other contracts," Hartford Fire Ins. Co. v. Shapiro, 117 So. 2d 348, 352 (Ala. 1960), and are therefore subject to the lex loci contractus doctrine. See Cincinnati Ins. Co. v. Girod, 570 So. 2d 595, 597

5

(Ala. 1990) ("Because this dispute involves an interpretation of an insurance policy issued in the State of Alabama, under Alabama's conflicts of law rule the trial court would be obligated to apply the substantive law of Alabama . . . ."). Because the policy at issue here was received and accepted by Mitchell in Alabama and makes no reference to the laws of some other jurisdiction (see Doc. 1-1), Alabama law must govern.

      **B.**      **Discover's Declaratory Judgment Claim**

Discover's complaint cites three Policy provisions that Discover claims preclude its coverage of Mitchell's alleged loss. However, because the parties' briefs discuss only one of those three provisions, and because neither party has come forward with any evidence that shows how either of the two other provisions does or does not apply to the facts of this case, the Court will limit its analysis similarly and address only that portion of the Policy that the parties' briefs identify as being most central to the instant dispute.[2]

---

[2]   Both of the provisions that are cited in the complaint but unmentioned by the briefs are set forth in a section of the Policy relating to "Loss Conditions." The first provision limits the amount of a loss payment, and the second relates to losses at vacant properties:

    G.  LOSS CONDITIONS

    \*   \*   \*

        4.  Loss Payment

    \*   \*   \*

            b.  We will not pay more than your financial interest in any property.

    \*   \*   \*

        6.  Vacancy

           If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage, we will:

           a.  Not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

                (1)  Vandalism;

6

Discover alleges that it is not obligated to cover Mitchell's alleged loss because copper piping and fixtures at Colonial Manor do not constitute "Covered Property" as defined by the Policy. The definition of "Covered Property" is prominently set forth in the first section of the first page of the Policy's Building and Personal Property Coverage Form as follows:

> Throughout this Coverage Part the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we, ["]us,["] and "our" refer to the Company providing this insurance.
>
> \*   \*   \*
>
> A.  COVERAGES
>
>   1.  Property at Your Premises
>
>       a.  We will pay for direct physical loss of or damage to Covered Property:
>
>           (1) If caused by or resulting from any of the Covered Causes of Loss; and
>
>           (2) Leakage of sprinkler systems, unless you have taken the necessary steps to protect the system from freezing;
>
>           (3) Building glass breakage;
>
>           (4) Water damage; or
>
>           (5) Theft or attempted theft.
>
>       b.  Reduce the amount we would otherwise pay for the loss or damage by 15%[.]
>
>       A building is vacant when it does not contain enough business personal property to conduct customary operations. Buildings under construction are not considered vacant.

(Doc. 1-1 at 35-36).

The record presently before the Court cannot support Discover's reliance on either provision. With respect to the first provision, neither party has quantified Mitchell's alleged loss or its financial interest. In fact, the only information in the record that even touches upon the amount of Mitchell's alleged loss is Discover's averment that the amount in controversy in this case exceeds $75,000. (Doc. 1 at 1, ¶ 4). With respect to the vacancy-related condition, though Mitchell admits that Colonial Manor was "partially vacant" in July 2006, there is no evidence in the record as to which building or buildings on those premises were vacant, whether Mitchell's alleged loss occurred in those buildings or in other buildings, whether the "partially vacant" buildings were vacant as that term is defined by Paragraph G.6.b of the Policy, or whether those buildings were vacant for more than 60 days preceding the alleged loss.

7

       (2) If the loss or damage occurs at or within 1000 feet of "covered premises."

  b. If Real Property is indicated in the Declarations, Covered Property, as used in this Coverage Part, means buildings, structures and other real property that you own including all property made a permanent part of the building, structure, or real property.

  c. If Personal Property is indicated in the Declarations, Covered Property, as used in this Coverage Part, means:

      (1) Business personal property that you own;

      (2) Business personal property that you lease from others if you have a written contractual obligation to insure it;

      (3) "Personal property of others" while in your care, custody, or control;

      (4) Personal property (other than vehicles) that belongs to you or your employees, officers, or partners; and

      (5) Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations, or additions:

         (a) Made a part of a building or structure that you occupy and do not own;

         (b) You acquired or that were made at your own expense but which you cannot legally remove.

(Doc. 1-1 at 29). Specifically, Discover argues that this provision precludes coverage because the copper piping and fixtures allegedly stolen from Colonial Manor constituted "other real property" that Mitchell, the Named Insured in the Property Declarations (id. at 24), did not own during the policy period. (Doc. 28-1 at 5).

     Because the above-referenced definition of "Covered Property" limits the coverage provided under the Policy, it is in the nature of an exclusion. Royal Ins. Co. of Am. v. Thomas, 879 So. 2d 1144, 1153 (Ala. 2003) ("An exclusion eliminates coverage that would exist in the absence of the exclusion." (citation omitted)). Under Alabama law, the burden of proving applicability of a policy

exclusion rests with the insurer. See, e.g., Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co., 817 So. 2d 687, 697 (Ala. 2001) ("Twin City has the burden of proof in asserting that a claim is excluded under its policy of insurance."); Acceptance Ins. Co. v. Brown, 832 So. 2d 1, 12 (Ala. 2001) ("In general, the insurer bears the burden of proving the applicability of any policy exclusion.").

In Alabama, "clauses setting out exceptions must be construed most strongly against the company that issued the policy." Id.  However, "in the absence of statutory provisions to the contrary, insurers have the right to limit their liability by writing policies with narrow coverage." St. Paul Mercury Ins. Co. v. Chilton-Shelby Mental Health Ctr., 595 So. 2d 1375, 1377 (Ala. 1992). "The court must enforce the insurance policy as written if the terms are unambiguous," Lambert v. Coregis Ins. Co., 950 So. 2d 1156, 1161 (Ala. 2006) (citations omitted), and it "must not rewrite a policy so as to include or exclude coverage that was not intended." State Farm Mut. Auto. Ins. Co. v. Brown, 26 So. 3d 1167, 1169 (Ala. 2009) (citations omitted).  "The issue whether a contract is ambiguous or unambiguous is a question of law for a court to decide." Nationwide Ins. Co. v. Rhodes, 870 So. 2d 695, 696 (Ala. 2003) (citation omitted).

Mitchell does not dispute that, as defined by the Policy, allegedly stolen property would be considered "other real property."  Under Alabama law, a chattel is converted to real property and deemed a "fixture" when it is becomes "an accessory to" and "part and parcel of" the realty by being physically annexed or affixed to it. Sycamore Mgmt. Group, LLC v. Coosa Cable Co., 42 So. 3d 90, 93 (Ala. 2010) (citation omitted).  Generally, "the question whether or not a particular article is a chattel or fixture is a mixed question of law and fact," but "when the facts are admitted or undisputed[,] the question of law only remains." Farmers & Merchs. Bank v. Sawyer, 163 So. 657, 659 (Ala. Ct. App. 1935).  Accordingly, the Court finds as a matter of law that the articles at issue here — which both parties describe in their respective pleadings as "piping and fixtures" — were

9

"real property" as that term is employed in the Policy.

Mitchell also concedes that it did not own the copper piping and fixtures at Colonial Manor. Indeed, at the heart of Mitchell's defense is the fact that Mitchell *never* purported to own real property at Colonial Manor and fully disclosed its lack of any ownership interest to Discover. See, e.g., Doc. 55 at 2 ("The information provided by Mitchell to [its insurance broker], and in turn provided to Discover, specifically stated that Mitchell owned **0%** of the Colonial Manor Apartments." (emphasis in original)).  Nonetheless, Mitchell argues that the exclusion relied upon by Discover does not apply because 1) Colonial Manor was specifically covered by the Policy by virtue of its inclusion in the Schedule of insured locations (id. at 10-11); 2) parol evidence regarding "[t]he parties' course of dealing while the policy was in place" demonstrates that the parties intended for the Policy to cover real property that Mitchell did not own (id. at 7 & 11-12); and 3) the exclusion is so broad as to impermissibly render the Policy's coverage illusory (id. at 12-16).  These arguments are unpersuasive.

As discussed above, in lieu of identifying each of the locations at which Mitchell was to enjoy coverage under the Policy, that Declarations page referred to a "Schedule on file." (Doc. 1-1 at 24).  Mitchell argues that "[t]he typed terms of the Schedule of Values control the scope of coverage despite the policy's pre-printed definition [of Covered Property]." (Doc. 55 at 11).  In support, Mitchell cites a string of cases that stand for the proposition that, when contract terms are inconsistent, typewritten matter prevails over printed matter.  (Id. (citing, inter alia, ERA Commander Realty, Inc. v. Harrigan, 514 So. 2d 1329 (Ala. 1987))).  However, in this case, no conflict exists between the typewritten Schedule and the printed Policy.  The Schedule simply indicates *where* Mitchell was covered, not *what* was covered.  The "Definitions" section of the Building and Personal Property Coverage Form notes that "premises described in the Declarations or

10

in a Schedule of Locations" are "covered *premises*" (Doc. 1-1 at 39, ¶ J.2 (emphasis added)); "Covered *Property*" is defined separately and is subject to a separate set of conditions.[3]  With respect to real property — but not personal property — ownership by the Named Insured is one such condition, and Mitchell's lack of ownership excludes from coverage the real property at Colonial Manor.

In an effort to show that the parties intended for the Policy to cover real property Mitchell did not own, Mitchell has put before the Court a dozen exhibits related to Royal Crest Apartments and the Carlyle Apartment Complex — two locations that Mitchell asserts are similar to Colonial Manor inasmuch as they are identified as unowned by Mitchell on the Schedule of Locations and their building values were apparently used, in part, to calculate Mitchell's total premium. (Docs. 56-5 to 56-16). All of these exhibits postdate delivery of the Policy and constitute evidence extrinsic to the parties' agreement. In Alabama, the course of dealing between parties is extrinsic evidence that cannot change, alter, or contradict the terms of an unambiguous written contract. See Drummond Co. v. Walter Indus., Inc., 962 So. 2d 753, 780 (Ala. 2006) (affirming trial court's exclusion of extrinsic evidence of the parties' interpretation of their agreements and evidence of their course of dealing where agreements were not ambiguous); Reeves Cedarhurst Dev. Corp. v. First Amfed Corp., 607 So. 2d 184, 187 (Ala. 1992) ("Because the circumstances surrounding the contract are considered only where the terms are ambiguous, we do not consider evidence of the parties' intentions or course of dealing." (citation omitted)).  There is nothing ambiguous about the phrase "buildings, structures and other real property that you own." (Doc. 1-1 at 29, ¶ A.1.b). Accordingly,

---

[3]  The Policy makes clear that "covered premises" describes places at which Mitchell possessed coverage, while "Covered Property" describes the realty and personalty that Mitchell insured. See, e.g., Doc. 1-1 at 32, ¶ A.15 (permitting Mitchell to "move Covered Property from 'covered premises' to another location in order to save it from imminent loss or damage"); id. at 33, ¶ A.17 (obligating Discover to pay, subject to certain conditions, "for direct physical loss of or damage to

11

Mitchell's exhibits and arguments regarding the Royal Crest and Carlyle apartment complexes are inadmissible and cannot bear on the Court's interpretation of the Policy.

Finally, Mitchell argues that a requirement that real property be owned by the Named Insured as a condition of coverage would render coverage illusory. The Court certainly agrees that, "[i]n Alabama, insurance contracts must be interpreted to avoid illusory coverage," Twin City Fire Ins. Co. v. Ohio Cas. Ins. Co., 480 F.3d 1254, 1263 n.7 (11th Cir. 2007), but narrow coverage is not illusory coverage. See Shrader v. Emp'rs Mut. Cas. Co., 907 So. 2d 1026, 1033 (Ala. 2005) ("When limitations or exclusions *completely* contradict the insuring provisions, insurance coverage becomes illusory." (emphasis added) (citation and quotation marks omitted)); see also Finger v. State Farm Fire & Cas. Co., No. 10-00192-KD-B, 2011 WL 1930674, at *4 (S.D. Ala. May 19, 2011) (DuBose, J.); Nautilus Ins. Co. v. Mobile Area Mardi Gras Ass'n, No. 10-0025-WS-M, 2010 WL 4269184, at *7 (S.D. Ala. Oct. 27, 2010) (Steele, J.). The parties do not dispute that the Policy covers certain personal property at Colonial Manor and certain real and personal property at various other locations. Accordingly, coverage under the Policy is not illusory merely because the parties' agreement excludes some potential losses.

Alabama law requires exceptions to coverage "to be interpreted as narrowly *as possible* in order to provide maximum coverage for the insured." Wakefield v. State Farm Mut. Auto. Ins. Co., 572 So. 2d 1220, 1223 (Ala. 1990) (emphasis added). But Mitchell does not put forth a narrow interpretation; instead, it urges the Court to essentially ignore the limiting language of the Policy entirely. This the Court cannot do. Because the plain, unambiguous language of the Policy indicates that coverage of real property extended only to those "buildings, structures and other real property" that Mitchell owned, and because Mitchell did not own the copper piping and fixtures at the

---

Covered Property that is temporarily away from 'covered premises'").

Colonial Manor apartment complex, Discover is entitled to the declaration it seeks disclaiming any obligation to cover Mitchell's alleged loss resulting from the theft of such piping and fixtures.

### C. Mitchell's Breach of Contract and Bad Faith Counterclaims

Given the Court's finding that the Policy does not cover Mitchell's alleged loss, Mitchell's counterclaims for breach of contract, bad faith failure to investigate, and bad faith failure to pay cannot stand. In the absence of an obligation to cover Mitchell's loss, Discover could not and did not breach the insurance contract. See Jones v. Alfa Mut. Ins. Co., 875 So. 2d 1189, 1195 (Ala. 2003) ("To establish a breach-of-contract claim, a plaintiff must show (1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages." (citation and quotation marks omitted)). And because breach of contract is an essential element of Mitchell's bad faith causes of action,[4] those claims necessarily fail. See Mitchell v. State Farm Fire & Cas. Co., 642 So. 2d 462, 466 (Ala. 1994) ("The summary judgment was proper with respect to Mitchell's claim alleging breach of contract; consequently, State Farm was entitled to a judgment as a matter of law with respect to Mitchell's bad faith claim as well." (citing Thomas v. Principal Fin. Group, 566 So. 2d 735 (Ala. 1990))).

## V. Conclusion

In accordance with the foregoing, it is **ORDERED** that Discover's Motion for Summary Judgment (Doc. 28) is **GRANTED**. The Court finds that the insurance policy at issue does not provide coverage to Mitchell for the alleged theft of copper piping and fixtures on or about July 2006 from units that Mitchell did not own at the Colonial Manor apartment complex in Pascagoula,

---

[4] See Federated Mut. Ins. Co. v. Vaughn, 961 So. 2d 816, 820 (Ala. 2007) ("To recover for bad-faith failure to investigate an insurance claim, the insured must show that the insurer breached the insurance contract when it refused to pay the insured's claim." (citation omitted)); Ex parte Alfa Mut. Ins. Co., 799 So. 2d 957, 962 (Ala. 2001) ("[A] breach of the insurance contract is an element of a bad-faith-refusal-to-pay claim.").

13

Mississippi.

It is **FURTHER ORDERED** that Mitchell's counterclaims against Discover for breach of contract, bad faith failure to investigate, and bad faith failure to pay are **DISMISSED with prejudice**.

As provided in Rule 58 of the Federal Rules of Civil Procedure, Judgment shall be entered by separate document.

**DONE** and **ORDERED** this the **21st** day of **October 2011**.

                                             /s/ Kristi K. DuBose
                                             **KRISTI K. DuBOSE**
                                             **UNITED STATES DISTRICT JUDGE**